

Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

**MEMO ENDORSED**

Brittany K. Lazzaro
212.216.1130 Direct Dial
blazzaro@tarterkrinsky.com

October 17, 2018

**BY ECF**

Hon. Ronnie Abrams, U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square, Courtroom 1506
New York, NY 10007

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:
DATE FILED: 10/17/2018
```

    Re:    **James Murphy v. Fivestory New York, LLC**
             **Civil Action No. 1:18-cv-06934-RA**

Dear Judge Abrams:

    This office represents Defendant, Fivestory New York, LLC ("Defendant"), in the above-referenced matter. Pursuant to Your Honor's Order, dated October 15, 2018 (ECF Doc. No. 14), Defendant writes with the consent of counsel for Plaintiff, James Murphy ("Plaintiff"), to request this Court to retain jurisdiction over the parties' settlement agreement.

    Accordingly, enclosed herewith is a true and correct copy of the Settlement Agreement, dated October 10, 2018, between Plaintiff and Defendant, in order for this Court to retain jurisdiction over such.

    In closing, we thank the Court for its consideration in this matter.

Application granted.  The Court has so-ordered the attached (no longer confidential) settlement agreement, the consent decree which was attached to it as Exhibit A, and the voluntary dismissals which were attached to it as Exhibit B.  This case is accordingly dismissed.

SO ORDERED.

Hon. Ronnie Abrams
10/18/2018

Respectfully submitted,

**TARTER KRINSKY & DROGIN LLP**

Brittany K. Lazzaro

cc:    All Counsel of Record (via ECF)

SO ORDERED:

_____

HON. RONNIE ABRAMS
UNITED STATES DISTRICT JUDGE

*10-18-18*

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into between Plaintiff, James Murphy, an individual ("Murphy" or "Plaintiff"), and Defendant, FiveStory New York, LLC ("FiveStory" or "Defendant"), (Plaintiff and Defendant, are collectively referred to herein as the "Parties" and, each individually as a "Party").

WHEREAS, Plaintiff filed an action in the United States District Court for the Southern District of New York styled James Murphy, on behalf of himself and all others similarly situated v. FiveStory New York LLC, Case Number:  1:18-CV-06934 (the "ADA Litigation"), against Defendant for alleged violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181-12189, 28 C.F.R. Part 36 (the "ADA"), the New York State Human Rights Law, N.Y. Exec. Law Article 15, Exec. Law § 290 et seq. ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL") relating to FiveStory's public-facing website located at www.fivestoryny.com (the "Website");

WHEREAS, Defendant disputes Plaintiff's allegations and expressly denies any liability to Plaintiff for the claims asserted;

WHEREAS, the Parties have agreed to a full and complete settlement of the ADA Litigation and acknowledge that the resolution thereof serves all Parties' interests in that they desire to avoid further expense, time, effort, and the uncertainty of litigating a still-developing, and at times conflicting, area of law;

WHEREAS, Plaintiff and Defendant have agreed to a full and complete settlement of the ADA Litigation and any and all issues pertaining to the accessibility of the Website for

individuals with disabilities including, but not limited to the ADA, and any other federal, state,

or local laws, regulations, or codes governing the accessibility of the Website for individuals

with disabilities and/or any other accessibility issues;

**NOW THEREFORE,** in consideration of the promises and mutual covenants and

undertakings contained herein, and other good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged by the Parties, the Parties agree to the following

terms and conditions as a full and complete settlement of the ADA Litigation and any and all

issues pertaining to the accessibility of the Website.

## I.    WEBSITE ACCESSIBILITY OBLIGATIONS

1.    <u>Website Modifications</u>:

Without admitting any liability or any obligation to do so, or that the current

version of the Website is not accessible to individuals with disabilities, all of which are denied,

within twenty-four (24) months after the Effective Date of this Agreement as defined in

Paragraph 18 below (the "Modification Period"), Defendant shall use commercially reasonable

efforts to modify the Website as needed to achieve substantial conformance with WCAG 2.0

Levels A and AA ("WCAG 2.0"). The Parties acknowledge that Defendant's obligations under

this Agreement do not include: (i) conformance with WCAG 2.0 or other accessibility standards

for content and/or websites not owned, operated, coded, managed and controlled by Defendant

including user-generated content and sites/content that are linked from or to the Website or its

mobile applications ("Third-Party Content/Websites"); and (ii) the provision of narrative

description for videos. The Parties further agree that Defendant shall not be responsible or liable

for the state of accessibility to Third-Party Content/Websites. In addition, Defendant shall not be

responsible for ensuring conformance of Archived Web Content (as defined below) with WCAG 2.0 criteria. The term "Archived Web Content" refers to content: (i) maintained exclusively for reference, research or recordkeeping; (ii) not altered or updated after the date of the archiving; and (iii) organized and stored in a dedicated area or areas clearly identified as being archived.

2.    <u>Website Accessibility Policy</u>:

Within twenty-four (24) months after the Effective Date of this Agreement as defined in Paragraph 18 below, Defendant shall adopt and implement a Website Accessibility Policy whereby, among other components, any changes or additions to the Website, to the extent reasonably practicable and subject to the limitations set forth herein, will substantially conform with WCAG 2.0.

3.    <u>Website Accessibility Resource</u>:

For the Term of this Agreement (as defined below), Defendant may, at its option, retain one or more individuals or entities, who are generally knowledgeable about website accessibility, to provide assistance with website accessibility issues (*e.g.*, WCAG 2.0, accessible website design; drafting of the Website Accessibility Policy) ("Website Accessibility Resource").

4.    <u>Website Accessibility Evaluation</u>:

Within twenty four (24) after the Effective Date (as defined below) of this Agreement (the "Initial Audit Deadline"), Defendant will have evaluated the accessibility of the Website pursuant to WCAG 2.0 ("Website Accessibility Evaluation").

5.    <u>Plaintiff's Right to Conduct Compliance Audit</u>:

Plaintiff (directly or through Plaintiff's counsel) shall have the right to perform, at his own cost, his own accessibility testing of the Website. Plaintiff shall have thirty (30) days

3

from the publication of a website accessibility notice as described in Paragraph 6 below to identify to Defendant in writing any ways in which it contends the Website does not substantially conform with WCAG 2.0. Notwithstanding anything to the contrary set forth herein and in the Consent Decree, if Plaintiff does not raise any issues in writing within that time frame, Plaintiff will be deemed to have waived his right to challenge the accessibility of the Website. If Plaintiff raises any purported failure(s) to substantially conform with WCAG 2.0 in writing within the 30-day window, the Parties shall meet and confer within thirty (30) days in good faith to determine a resolution of the issue(s); provided, however, that the Plaintiff understands that he shall not be entitled to recover from Defendant any additional damages or any portion of his attorneys' or experts' fees or costs related to such activity.

6.    Website Accessibility Notice Statement:

Within ninety (90) days after the conclusion of the Modification Period, or within fifteen (15) business days after Plaintiff confirms to Defendant and its counsel the Website's substantial conformance with WCAG 2.0 in writing, whichever is sooner, Defendant shall add a section or link to the Website labeled "Accessibility" which shall contain, at least, a statement setting forth the Website's compliance with WCAG 2.0 and provide an e-mail address or link through which users of the Website can provide feedback regarding the Website's accessibility. This website accessibility statements may be modified at Defendant's sole discretion.

## II.    RELEASE, COOPERATION, AND SETTLEMENT PAYMENT

7.    Release of Plaintiff's Claims.

For and in consideration of the promises, commitments, and undertakings set forth in this Agreement, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Plaintiff, James Murphy, on behalf of himself and any of his agents,

employees, representatives, assigns, heirs, executors, family members, spouses, trustees, partners, insurers, and any and all others who could assert a claim by or through Plaintiff and each of them acting in the listed capacity for Plaintiff (the "Releasing Persons"), intending to make a full, complete and general release of all known and unknown claims, shall be deemed to have jointly and severally forever, unconditionally and irrevocably released and discharged Defendant, and each of its past, present and future related persons, partnerships, corporations, or other entities and each of their respective predecessors, successors, successor owners, parents, subsidiaries, affiliates, assigns, transferees, together with their respective past, present, and future officers, directors, employees, agents, shareholders, attorneys (including but not limited to Tarter Krinsky & Drogin LLP, its partners, counsel and associates), servants, representatives, parent entities, subsidiary entities, affiliate entities, partners, insurers, reinsurers, divisions, contract vendees, information technology service providers and the respective predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing (collectively, the "Released Parties"), from any and all claims, causes of action, suits, demands, rights, liabilities, damages, debts, lawsuits, losses, judgments, fees, costs or expenses of any kind whatsoever, whether known or unknown, fixed or contingent, including those arising under any theory of law, whether common, constitutional, statutory or other, of any jurisdiction, foreign or domestic, which they now have, ever had or may claim, including any monetary, injunctive, or declaratory relief relating thereto, or for reimbursement of attorney's fees, costs and expenses, relating to the Website, including, but not limited to the ADA Litigation, but not including claims related to the enforcement of this Agreement (the "Released Claims"). The Released Claims expressly include all claims regarding the accessibility of the Website, including but not limited to all claims arising from or relating to the ADA, any federal, state, or local law, statute or ordinance, rule or

principle of common law or doctrine in law or equity, known or unknown, suspected or

unsuspected, foreseen or unforeseen, real or imaginary, actual or potential, through the date of

this Agreement.    Plaintiff, on his own behalf and on behalf of the Releasing Persons,

acknowledges that he may have Released Claims that are presently unknown and that the release

contained in this Agreement is intended to and does fully, finally and forever discharge all such

Released Claims, whether now asserted or unasserted, known or unknown, including, but not

limited to, those arising out of or in connection with the ADA Litigation.  In consideration of the

foregoing terms, Plaintiff shall refrain from undertaking further investigation of or commencing

any legal proceeding against the Released Parties concerning any matter related to this

Agreement, except to the extent necessary to enforce the Agreement's terms.

       8.    <u>Payment of Attorney's Fees and Expenses.</u>

       a.    As full and complete compromise of all Released Claims, Defendant make

a payment by wire to Plaintiff's counsel in the amount agreed to by the Parties' counsel in a

separate writing (the "Settlement Payment") payable as follows: (i) Defendant shall make a

payment of fifty percent (50%) of the Settlement Payment, within ten (10) business days of the

last of the following to occur: (A) Plaintiff's signature on this Agreement; (B) Defendant's

receipt of a fully executed Form W-9 for Plaintiff's Counsel with its  taxpayer identification

number; (C) the Consent Decree attached to this Agreement as Exhibit A "so ordered" and

entered by the Court (which Consent Decree shall be filed by Plaintiff's counsel); and (D) the

Court "So Ordering" the Stipulation of Dismissal with Prejudice which will be filed by

Plaintiff's counsel as set forth in Paragraph 11 below (the "First Payment"); and (ii) Defendant

shall make a second payment of fifty percent (50%) of the Settlement Payment within sixty (60)

calendar days of the First Payment.  This amount consists of any and all reasonable attorneys'

fees, expenses, and costs, including expert costs, and re-inspection costs, incurred or to be incurred in this matter, which are paid to Plaintiff's attorneys in lieu of statutory fees that might otherwise be recovered under the ADA or otherwise applicable federal, state, or local accessibility laws. The Settlement Payment shall be wired to Plaintiff's Counsel in accordance with the payment instructions set forth below:

Routing Transit No.: ███████

Bank: ████

Account No.: ███████

Beneficiary: Cohen & Mizrahi LLP

b.    Defendant will issue to Plaintiff's Counsel an IRS form 1099 for the Settlement Payment at the appropriate time.

c.    Plaintiff's Counsel shall be solely responsible for federal, state, and local taxes due on the Settlement Payment, and specifically agrees to indemnify and hold Defendant harmless for any and all claims involving federal, state, or local taxes resulting from such responsibility.

9.    Notwithstanding the provisions of Paragraph 21 hereof, in the event a lawsuit is brought against Defendant in the future alleging the Website's failure to be accessible or to comply with any website accessibility standards or law related thereto ("Future Lawsuit"), it is hereby agreed that Defendant, its owners, officers, directors and/or representatives (including legal counsel) may produce this Agreement to any future plaintiff or their respective counsel, as evidence of a prior agreement to remediate the Website, except for those confidential terms contained in Paragraph 8 hereof – namely the monetary amount paid by Defendant as set forth in this Agreement – which shall be redacted therefrom.

7

Case 1:18-cv-06934-RA    Document 15-1    Filed 10/17/18    Page 8 of 33

10.     Should disclosure of this Agreement ever be required in accordance with the limited circumstances described below, the Party being forced to make the disclosure shall have the terms of Paragraph 8 redacted.

## III.    GENERAL PROVISIONS

11.     Upon the execution of this Settlement Agreement by both Parties, the Parties shall promptly execute, and Plaintiff, within two (2) business days, shall then file the Consent Decree attached hereto as Exhibit A to be followed by the Stipulation of Dismissal with Prejudice with the Court seeking dismissal of the ADA Litigation (attached to this Settlement Agreement as Exhibit B) once the Consent Decree has been "so ordered."

12.     This Settlement Agreement and its construction shall be governed by, and it shall be interpreted by this Court in accordance with, New York law, without regarding to New York's conflict of law principles.

13.     If the Website subject to this Settlement Agreement is sold or closed prior to the conclusion of the Modification Period, it shall, as of that date, no longer be subject to the terms of this Settlement Agreement.  Nothing herein will prohibit Defendant from selling, closing, altering the nature of, or otherwise terminating the operation of the Website.

14.     Nothing in this Settlement Agreement shall require Defendant to complete any alteration/modification to the Website if completion of such modification/alteration is not readily achievable, is technically infeasible, virtually impossible, would constitute a fundamental alteration of the Website's features or primary use, or would create an undue burden.

15.     The failure of Defendant to perform any action required by this Settlement Agreement shall not subject it to any liability or remedy for damages or otherwise, or constitute a breach of this Agreement, if such failure is occasioned in whole or in part by acts of God, fires,

accidents, earthquakes, hurricanes, blizzards, explosions, floods, wars, terrorism, labor disputes or shortages, riots or sabotage, or any other similar circumstances beyond Defendant's reasonable control. Defendant shall notify counsel of any such occurrence.

16.    Notwithstanding the requirements of Paragraph 5 above and subject to the limitations on Plaintiff set forth therein, if, at any time, Plaintiff or his counsel allege any breach of any term or condition of this Agreement by Defendant, or allege any other accessibility concerns or any claims in connection with the Website, they agree to provide written notice by overnight delivery service and electronic mail to counsel for Defendant under Paragraph 30 below and comply with all the procedures set forth in the Consent Decree attached hereto as Exhibit A. The notice shall specify the alleged breach, the alleged violation of law, each item allegedly not in compliance with the Agreement or with applicable law, the reason why Plaintiff or his counsel believes it is not in compliance, and any other items required by the Consent Decree (Ex. A). The Parties agree not to file any motion or commence any proceeding related to this Agreement or the Consent Decree or any alleged breach or alleged noncompliance until all applicable procedures set forth in the Consent Decree (Ex. A) have been exhausted.

17.    For and in consideration of the promises, commitments, and undertakings set forth in this Agreement, Plaintiff covenants and agrees on behalf of the Releasing Persons that with regard to the Released Claims released in this Agreement and the Website, none of the Releasing Persons or their counsel, including Plaintiff's counsel, will sue, institute, file, prosecute, cause to prosecute, assist in prosecuting, permit to be prosecuted or induce, solicit, encourage, assist, participate in or in any way aid any other person or entity to sue, institute, file, prosecute or file any Released Claim or any proceeding in any court or any administrative or arbitration forum (in any jurisdiction), or otherwise allege or assert any Released Claim

9

(including by way of counterclaim, defense, or set off to any legal action against it) against any of the Released Parties, or bring any Released Claim against them or allege any liability against them for any Released Claims of any nature whatsoever which are released or covered by the release in this Agreement. Notwithstanding the terms of any court order related to the ADA Litigation, Plaintiff and Plaintiff's counsel hereby expressly waive any right to re-open the ADA Litigation following dismissal thereof, by filing a motion with the Court. Plaintiff and his counsel hereby represent, warrant and covenant that: (i) they currently know of no existing act or omission by Defendant or any of the other Released Parties that may constitute a claim excluded from the release set forth in this Agreement; (ii) they are unaware of any potential claimant, putative class member or other counsel who intends to make demands, assert any claims, or bring litigation against the Released Parties based on any claims similar to the Released Claims or any claims brought in the ADA Litigation; and (iii) they have not been notified nor are otherwise aware of any such intention. If, notwithstanding the foregoing covenants, representations and warranties, any other person or entity in fact threatens to or asserts any claim against any of the Released Parties arising out of or related to the ADA, NYSHRL, NYCHRL or any other similar law, rule or regulation concerning the Website, Plaintiff and his counsel shall cooperate and provide reasonable assistance to Defendant and its counsel to extinguish or dismiss any such claim or threatened claim. Notwithstanding the immediately preceding sentence, to the extent any such action may be brought by a third party, Plaintiff, on behalf of the Releasing Persons, expressly waives any claim to any form of monetary or other damages, or any other form of recovery or relief in connection with any such action except for statutorily required witness fees. In consideration of the foregoing terms, Plaintiff and his counsel shall refrain from directly or indirectly undertaking further investigation of or commencing any legal proceeding

10

against the Released Parties concerning any matter related to this Agreement or the Website, except to the extent necessary to enforce the Agreement's terms. Plaintiff further specifically agrees and acknowledges that he will not, and he shall cause Plaintiff's counsel to not, at any time in the future seek relief (including, but not limited to, injunctive relief, damages, attorney's fees, expert's fees, litigation expenses and costs) against Defendant or any of the Released Parties for any alleged violation of Title III of the ADA and/or all other applicable federal, state, and local laws, rules, regulations, and codes, or any regulations, rules, and/or standards promulgated thereunder, and/or any similar law pertaining to accessibility for individuals with disabilities regarding the Website. It is expressly agreed that this provision shall not apply to or bar claims of breach of this Agreement. Other than the ADA Litigation, which is fully and completely resolved by this Agreement, Plaintiff represents and warrants to Defendant that he has not filed any complaint or commenced any action or proceeding against any of the Released Parties with any agency or court. Plaintiff's counsel represents that as of the Effective Date, they have not been retained or considered for representation by any individuals or entities, other than Plaintiff, that have or may have any potential claims, grievances or causes of action against the Released Parties with respect to the Website similar to those asserted in the ADA Litigation, and further that they will not solicit such persons or refer such persons to other counsel for the purpose of bringing claims that have arisen from the beginning of time through the Effective Date. Nothing in this Paragraph shall be construed as a restriction of Plaintiff's counsel's right to practice in contravention of the applicable rules of professional responsibility.

18.    This Agreement shall become effective as of the date of the last signature below ("Effective Date") and shall remain in effect for twenty-four (24) months from that date (the "Term").

19.    If legislation is passed modifying Title III of the ADA, NYSHRL and/or NYCHRL or if the United States Department of Justice ("DOJ") or any other federal, state or local government entity promulgates final ADA Title III regulations or other federal, state or local laws, rules, policies or statements regarding website accessibility, this Agreement shall automatically, without further action by the Parties, be modified such that Defendant shall be required only to achieve the Website's compliance with the minimum requirements set forth in any such legislation, regulation, policy or statement within the timeframe for compliance set forth in such legislation, regulation, policy or statement.   The Parties acknowledge that this provision shall not be interpreted to obligate Defendant to take steps regarding the accessibility of its Website beyond those already included in this Agreement.   For the avoidance of doubt, in the event that the regulations, rules, policies or statements promulgated by the DOJ or federal, state or local legislatures impose additional requirements or a shorter timeframe in which Defendant must comply therewith, Plaintiff shall have no greater rights and will be bound by the terms hereof and the releases set forth herein, despite the change in law, legislation or regulation.

20.    The signatories represent that they have the authority to bind the respective parties identified in this Agreement to the terms of this Agreement.

21.    Plaintiff, for himself and his Counsel, agents and representatives, and Defendant, its Counsel, agents and representatives, agree that, they will not, without the prior written consent of the other Party, communicate, publish, display, discuss, disclose, reveal or characterize (directly or indirectly by innuendo or other means (*e.g.*, soliciting demands or

12

requests by other parties)) in any way to anyone under any circumstances:  (i) the terms or existence of this Agreement; (ii) the negotiations leading up to this Agreement; and (iii) the circumstances concerning any dispute related to the Claims, except:  (a) as may be required by Order of Court or other quasi-judicial or regulatory body with the legal right and power to demand such information; (b) to Plaintiff's or Defendant's legal and financial advisors, in each case where such disclosure may be required for legitimate legal, business or tax purposes and where the recipient of such information agrees to receive and maintain the information in strict confidence in accordance with the terms of this Agreement; (c) to any appropriate regulatory or tax authorities with jurisdiction over Plaintiff or Defendant; (d) in any other litigation or threatened litigation against Defendant regarding the accessibility of the Website; and (e) as otherwise may be required by law.  Prohibited disclosure hereunder shall include, without limitation, the making of any statement, written or oral, to any person through any medium, including (without limitation) newspaper, magazine, radio, television or electronic or digital media (such as internet website, blog, social media platform, chat room, instant messaging or any other similar medium).  If Plaintiff or Defendant, or their respective Counsel, agents or representatives receive an unsolicited inquiry about this Agreement, the Claims, any disputed matter, any released claims, or any other matter subject to the confidentiality and non-disclosure provisions of this Agreement, such Party shall not respond without first receiving the express written permission of the other Party (which shall not be unreasonably withheld).  If any Party is required to disclose the terms and conditions of this Agreement, the disclosing Party must first provide notice, by overnight mail and e-mailed .pdf file, to the other Party at least twenty (20) days prior to disclosure to allow the non-disclosing Party the opportunity to prevent the disclosure and, if ordered to disclose the terms and conditions of this Agreement, will make all

efforts to do so under seal. Further, Plaintiff and Defendant and their respective Counsel, agents and representatives, agree not to make any disparaging remarks about the other Party relating to: (i) this Agreement; or (ii) the services or practices of Defendant related to the subject matter of this Agreement. If any Party shall be in material breach of the obligations in respect of the confidentiality and non-disclosure provisions of this Agreement, the non-breaching Party shall be entitled to seek, in addition to other remedies, temporary and permanent injunctions restraining such breach, and to a decree for specific performance of this provision.

22.    The Parties agree that this Settlement Agreement shall not be filed with the Court, but originals shall remain in the possession of the Parties and shall be filed by Parties for enforcement purposes only, in accordance with Paragraph 21, or if required by the Court to approve the settlement (in which case it will be done under seal).

23.    Should any provision of this Settlement Agreement require interpretation or construction, it is agreed by the Parties that the entity interpreting or construing this Settlement Agreement shall not apply a presumption against one party by reason of the rule of construction that a document is to be construed more strictly against the Party who drafted/prepared the document.

24.    This Agreement may be executed in counterparts, each of which shall be deemed an original against the Party whose signature is provided, and all of which shall be considered an original and together shall constitute one agreement binding on all Parties. Electronic signatures shall be deemed to be as valid and enforceable as original ink signatures.

25.    For the purposes of this Settlement Agreement all electronically mailed ".pdf" file signatures shall be accepted as original signatures and shall be deemed as legally binding as the original signatures.

26.     Each person executing this Settlement Agreement on each Party's behalf, had been duly authorized to sign on behalf of the respective party and to bind each to the terms of the Settlement Agreement.

27.     The Parties agree to execute all reasonable further and additional documents and instruments, as shall be necessary or expedient to carry out the provisions of this Agreement, and shall promptly and in good faith undertake all reasonable acts to effectuate the provisions of this Agreement.

28.     Plaintiff further represents and warrants that he has not received any promise or agreement not expressly contained in this Settlement Agreement, and that he is not relying upon any statements or representations made by Defendant, its agents, attorneys, employees, or persons acting on its behalf concerning the merits of any claims or the nature, extent, or duration of any damages, or any other thing or matter, but is relying solely upon his own judgment and this Settlement Agreement.

29.     This Settlement Agreement contains the entire agreement between the Parties with respect to the matters set forth herein, and it fully supersedes any and all prior agreements, statements, representations, or understandings pertaining to the subject matter herein.   This Settlement Agreement shall be binding upon and inure to the benefit and/or detriment of (in the case of obligations) the members, executors, administrators, personal representatives, heirs, successors, and assigns of each party.

30.     All letters, notices, requests, demands and other communication required or permitted to be given to the Parties pursuant to this Agreement shall be in writing, provided by electronic mail and next-day (excluding Saturday and Sunday) express delivery service and addressed as follows:

For Plaintiff:

Joseph H. Mizrahi, Esq.
Cohen & Mizrahi LLP
300 Cadman Plaza West, 12th Floor
Brooklyn, NY 11201
E-mail:  joseph@cml.legal
Phone:  (929) 575-4175

For FiveStory:

Gina M. Piazza
Tarter Krinsky & Drogin LLP
1350 Broadway, 11th Floor
New York, NY 10018
Email:  gpiazza@tarterkrinsky.com
Phone:  (212) 216-1129

31.    This Agreement is the result of a compromise and shall never be construed as an admission or acknowledgement by Defendant of any wrongdoing, liability, or violation of the ADA, applicable state and local accessibility laws, or any other federal, state, or local law, regulation, or duty on its part or on the part of its predecessors, successors, assigns, parents, subsidiaries, affiliates, attorneys, officers, directors, or employees.  Indeed, Defendant expressly denies any such wrongdoing, liability, violation, or responsibility.

**WHEREFORE,** the Parties agree that this Settlement Agreement constitutes their entire agreement, and that they understand its provisions and requirements, and it is entered into voluntarily and in good faith.

**SIGNATURES FOLLOW ON THE NEXT PAGE**

AGREED AND CONSENTED TO:


**James Murphy**
Date: _____10-10-2018_____


**FiveStory New York, LLC**


By: _____
Name: _____
Title: _____
Date: _____


APPROVED AS TO FORM AND CONTENT (AND AGREED, WHERE APPLICABLE):


**COHEN & MIZRAHI LLP, attorneys for Plaintiff**


By: _____
Joseph H. Mizrahi, Esq.


**GOTTLIEB AND ASSOCIATES, attorneys for Plaintiff**


By: _____
Jeffrey M. Gottlieb, Esq.


17

AGREED AND CONSENTED TO:


_____
**James Murphy**
Date: _____


**FiveStory New York, LLC**

By: _____
Name: _____
Title: _____
Date: _____


APPROVED AS TO FORM AND CONTENT (AND AGREED, WHERE APPLICABLE):


**COHEN & MIZRAHI LLP, attorneys for Plaintiff**


By: _____
Joseph H. Mizrahi, Esq.


**GOTTLIEB AND ASSOCIATES, attorneys for Plaintiff**


By: _____
Jeffrey M. Gottlieb, Esq.


SO ORDERED:

_____
HON. RONNIE ABRAMS
UNITED STATES DISTRICT JUDGE

17

**EXHIBIT A**
**CONSENT DECREE**

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES MURPHY,

           Plaintiff,

   v.

FIVESTORY NEW YORK,

           Defendant.

ECF CASE

No.: 1:18-cv-06934

## **CONSENT DECREE**

1.    This Consent Decree is entered into as of the Effective Date, as defined below in Paragraph 11, by and between the following parties: Plaintiff, James Murphy ("Plaintiff"), and Defendant, FiveStory New York, LLC ("Defendant"; Plaintiff and Defendant are collectively referred to as the "Parties" and individually as "Party" for the purposes and on the terms specified herein).

## **RECITALS**

2.    Title III of the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §§ 12181-12189 and its implementing regulation, 28 C.F.R. pt. 36, prohibit discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation by any private entity that owns, leases (or leases to), or operates any place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

3.    On August 1, 2018, Plaintiff filed this putative class action lawsuit on behalf of himself and all others similarly situated against Defendant (the "Action"), alleging that the website directed at consumers, which can be accessed by consumers through the use of the

19

domain name www.FiveStoryNY.com (the "Website", as further defined in Paragraph 14),
contains barriers that prevent full and equal use by blind persons, in violation of Title III of the
ADA, 42 U.S.C. §§ 12181–12189 ("ADA"), the New York State Human Rights Law
("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

4.      Defendant expressly denies that the Website violates any federal, state or local
law, rule or regulation, including, without limitation, ADA, NYSHRC and NYCHRC.  By entry
into this Consent Decree, Defendant does not acknowledge or admit any violation of any law or
any wrongdoing of any kind in any respect.

5.      This Consent Decree resolves, settles, and compromises all issues between the
Parties based on the allegations set forth in Plaintiff's Complaint (the "Complaint") and those
claims or issues which arise from such allegations.

6.      This Consent Decree is entered into by Plaintiff, individually, prior to a
determination on class certification. Therefore, notice to the putative class of this Consent
Decree is not required under Fed. R. Civ. P. 23(e) nor appropriate.

## **JURISDICTION**

7.      Plaintiff alleges that Defendant operates the Website, which is available through
the internet to personal computers, laptops, mobile devices, tablets, and other similar technology.
Plaintiff contends that the Website is a public accommodation subject to Title III of the ADA
because the Website is, or is part of a sales or rental establishment and a service establishment
whose operations affect commerce and a public accommodation subject to 42 U.S.C §12181(7);
12182(a); 28 C.F.R. §§ 36.104, 36.201(a).  Defendant denies that the Website is a place of public
accommodation or is otherwise subject to Title III of the ADA.

20

8.      Plaintiff is suing on his own behalf, and on behalf of all other individuals similarly situated as an aggrieved person pursuant to 42 U.S.C. § 12188(b)(2)(b).

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1331 and § 1345, and 42 U.S.C. § 12188. The Parties agree that venue is appropriate.

## AGREED RESOLUTION

10.     Plaintiff and Defendant agree that it is in the Parties' best interest to resolve this Action on mutually agreeable terms without further litigation. Accordingly, the Parties agree to the entry of this Consent Decree without trial or further adjudication of any issues of fact or law raised in the Complaint.

In resolution of this action, the Parties hereby AGREE to and the Court expressly APPROVES, ENTERS, AND ORDERS the following:

## DEFINITIONS

11.     "Effective Date" means the date on which this Consent Decree is entered on the Court's Docket Sheet following approval by the Court.

12.     "Person(s) with a visual impairment" means any person who has a visual impairment who meets the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

13.     "Reasonable Efforts" means the commercially reasonable efforts that a reasonable person in Defendant's position would use to improve the existing level of accessibility of the Website to Persons with a visual impairment by using the Worldwide Web Consortium's Web Content Accessibility Guidelines ("WCAG") as a guideline to make such improvements, in accordance with the level agreed upon between the Parties in the Settlement Agreement (as

21

defined below). Any disagreement by the Parties as to whether Defendant has used Reasonable Efforts as provided for under this Consent Decree shall be subject to the dispute resolution procedures set forth in paragraphs 19 through 25 of this Consent Decree. Reasonable Efforts shall be interpreted so as not to require Defendant to undertake efforts whose cost, difficulty or impact on Defendant, its affiliates' or contract vendees' Website-related operations would constitute an undue burden, as defined in Title III of the ADA but as applied to the consumer focused merchandise-selling Website-related operations, or would otherwise require efforts that are virtually impossible, are not commercially reasonable, readily achievable or technically feasible or constitute a fundamental alteration of the Website's features or primary use.

14.    The Website, as initially defined in Paragraph 3 above, means the U.S. portion of the eCommerce webpages owned by Defendant that allow consumers to obtain information about products and services of the FiveStory NY and purchase products on-line for delivery to their homes or places of business in some geographic areas. The term "Website" does not include any mobile applications or Third-Party Content (as defined below), nor does it apply to any portions of the Website directed at business users or Defendant's business partners, or those designated for internal use by Defendant or to websites not owned, operated, coded, managed and controlled by Defendant but that are linked from or to the Website or its mobile applications.

15.    "Third-Party Content" means web content that is generated by a third party and not owned, coded, managed and operated by Defendant and hosted on the Website.

### TERM

16.    The term of this Consent Decree shall commence as of the Effective Date and remain in effect for twenty-five (25) months from the Effective Date.

### COMPLIANCE WITH TITLE III OF THE ADA

22

17.    Web Accessibility Conformance Timeline: Defendant shall use Reasonable Efforts to improve the existing level of accessibility of the Website to Persons with a visual impairment within twenty-five (25) months of the Effective Date.

### SPECIFIC RELIEF TO PLAINTIFF

18.    Specific Relief: Plaintiff and Defendant have agreed to settle all matters relating to costs, damages, attorneys' fees, experts' fees, and other financial matters, relating to any alleged inaccessibility of the Website through a separate agreement (the "Settlement Agreement") hereby incorporated by reference into this Consent Decree. The Settlement Agreement shall be provided to the Court ▮▮▮▮▮▮▮▮for inspection and review if the Court so requires in order to extend its enforcement jurisdiction over the terms of the Settlement Agreement.

### PROCEDURES IN THE EVENT OF DISPUTES

19.    The procedures set forth in Paragraphs 19 through 24 must be exhausted in the event that (i) Plaintiff alleges that Defendant has failed to meet its obligations pursuant to this Consent Decree or (ii) Defendant alleges that there is a criteria of WCAG with which it cannot substantially comply as set forth herein. There will be no breach of this Consent Decree by Defendant in connection with such allegations until the following procedures have been exhausted.

20.    If a Party believes that the other Party hereto has not complied in all material respects with any provision of the Consent Decree, that Party shall provide the other Party with written notice of non-compliance containing the following information: (i) the alleged act of non-compliance; (ii) a reference to the specific provision(s) of the Consent Decree that is not being complied with in all material respects; (iii) a statement of the remedial action sought by the

initiating party; and (iv) a reasonably detailed statement of the specific facts, circumstances and legal argument supporting the position of the initiating party (the "Notice of Non-Compliance"). Plaintiff will notify Defendant in writing after the dates for their compliance set forth herein if Plaintiff believes that any act of Defendant is in any way not compliant with this Consent Decree. Defendant will notify Plaintiff in writing if it believes there is a criteria of this Consent Decree with which it cannot substantially comply hereunder. All notifications must include reasonable detail and shall be made in the manner set forth in Paragraph 26. Plaintiff waives any and all rights that he may otherwise have to recover from Defendant any damages, attorneys' or experts' fees, costs, expenses, or disbursements of any kind related to any Notice of Non-Compliance and related activities.

21.     Within thirty (30) days of either Party receiving Notice of Non-Compliance as described in Paragraph 20, the other Party will respond in writing to the notice. Within fifteen (15) days of receipt of the response, the Parties will meet by telephone, or in person, in an attempt to informally resolve the issue.

22.     If the issue remains unresolved within thirty (30) days of the meeting referenced in Paragraph 21, the Parties will each have an additional thirty (30) days to select an expert and the two experts will mutually select an independent accessibility consultant with substantial experience in accessible website design who will evaluate the particular item(s) raised based on whether those item(s) of the Website are in substantial conformance with Defendant's obligations under Paragraph 17 above.

23.     There will be no breach of this Consent Decree unless (a) the independent accessibility consultant determines that the particular item(s) of the Website are not in substantial conformance with Defendant's obligations under Paragraph 17 above and (b) Defendant fails to

remedy the issue within a reasonable period of time of not less than ninety (90) days after receiving the independent accessibility consultant's written opinion. If the accessibility consultant believes that a reasonable time using Reasonable Efforts to remedy the items found not to be in substantial compliance is longer than ninety (90) days, then the Parties may agree on a longer time period without leave of Court so long as the extension is documented in writing and executed by the Parties to this Agreement or their respective counsel. If the accessibility consultant finds that a particular item found not to be in substantial compliance cannot be remedied using Reasonable Efforts, Defendant shall not be obligated to remedy that item.

24.    The determination and award of the independent accessibility consultant will be enforceable in this Court. All costs related to the independent accessibility consultant shall be borne equally by the Parties.  Each Party shall bear its own costs, expenses, attorney fees and expert fees in connection with the determination and award of the independent accessibility consultant.

25.    Any of the time periods set forth in Paragraphs 19 through 23 may be extended by a written agreement signed by all of the Parties.

26.    Any notice or communication required or permitted to be given to the Parties hereunder shall be given in writing by e-mail or facsimile and by overnight express mail, addressed as follows:

For PLAINTIFF:              Joseph H. Mizrahi, Esq.
                           Cohen & Mizrahi LLP
                           300 Cadman Plaza West, 12th Floor
                           Brooklyn, NY 11201
                           Phone: (929) 575-4175
                           Fax: (929) 575-4195
                           Email: joseph@cml.legal


For DEFENDANT:             Gina M. Piazza, Esq.

25

Tarter Krinsky & Drogin LLP
1350 Broadway. 11th Floor
New York, NY 10018
Phone: (212) 216-1129
Fax: (212) 216-8001
Email: gpiazza@tarterkrinsky.com

## MODIFICATION

27.     No modification of this Consent Decree shall be effective unless in writing and signed by authorized representatives of all Parties.

## ENFORCEMENT AND OTHER PROVISIONS

28.     The interpretation and enforcement of this Consent Decree shall be governed by the laws of the State of New York.  This Court shall retain jurisdiction over this matter for purposes of enforcement of this Consent Decree in accordance with its terms.

29.     This Consent Decree contains the entire agreement of the Plaintiff and the Defendant concerning the subject matter described in Paragraph 3, other than the terms of the Settlement Agreement, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any Party, that is not contained in this Consent Decree, and concerns the subject matter described in Paragraph 3, shall be enforceable, other than the Settlement Agreement.

30.     If any provision of this Consent Decree is determined to be invalid, unenforceable, or otherwise contrary to applicable law, such provision shall be deemed restated to reflect as nearly as possible and to the fullest extent permitted by applicable law its original intent and shall not, in any event, affect any other provisions, all of which shall remain valid and enforceable to the fullest extent permitted by applicable law.

## PERSONS BOUND AND INTENDED THIRD-PARTY BENEFICIARIES

26

31.     The Parties to this Consent Decree expressly intend and agree that this Consent Decree shall inure to the benefit of all Persons with a visual impairment, which visually-impaired persons shall constitute third-party beneficiaries to this Consent Decree.

32.     Plaintiff and Defendant agree that, as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described herein and alleged in the Complaint.  To the extent that any of the Parties previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in Paragraph 3, such Party is no longer required to maintain such a litigation hold.  Nothing in this paragraph relieves any Party of any other obligations imposed by this Consent Decree.

33.     The signatories represent that they have the authority to bind the respective Parties to this Consent Decree.

## CONSENT DECREE HAS BEEN READ

34.     This Consent Decree has been carefully read by each of the Parties, and its contents are known and understood by each of the Parties. This Consent Decree is signed freely by each party executing it. The Parties each had an opportunity to consult with their counsel prior to executing the Consent Decree.

[SIGNATURES TO FOLLOW]

Dated:    10-10-2018                          _James Murphy_
                                              JAMES MURPHY

                                              FIVESTORY NEW YORK, LLC

Dated: _____                        By: _____
                                              Name: _____
                                              Title: _____

APPROVED AS TO FORM AND CONTENT:

Dated:    10-10-2018                          COHEN & MIZRAHI LLP

                                              By: _____
                                              Joseph H. Mizrahi, Esq.
                                              300 Cadman Plaza West, 12th Floor
                                              Brooklyn, NY 11201
                                              Phone: (929) 575-4175
                                              Fax: (929) 575-4195
                                              Email: joseph@cml.legal
                                              Attorneys for Plaintiff, James Murphy

Dated: _____                        TARTER KRINSKY & DROGIN LLP

                                              By: _____
                                              Jonathan Temchin, Esq.
                                              1350 Broadway, 11th Floor
                                              New York, NY 10018
                                              Phone: (212) 216-1139
                                              Fax:  (212) 216-8001
                                              Email: jtemchin@tarterkrinsky.com
                                              Attorneys for Defendant, FiveStory New
                                              York, LLC

SO ORDERED:

_____
U.S.D.J.
      10 - 18-18

28

Dated: _____

JAMES MURPHY

FIVESTORY NEW YORK, LLC

Dated: Oct. 9, 2018

By: _____
Name: FRED DISTENFELD
Title: MEMBER/OWNER

APPROVED AS TO FORM AND CONTENT:

Dated: _____

COHEN & MIZRAHI LLP

By: _____
Joseph H. Mizrahi, Esq.
300 Cadman Plaza West, 12th Floor
Brooklyn, NY 11201
Phone: (929) 575-4175
Fax: (929) 575-4195
Email: joseph@cml.legal
Attorneys for Plaintiff, James Murphy

Dated: 10.10.18

TARTER KRINSKY & DROGIN LLP

By: _____
Jonathan Temchin, Esq.
1350 Broadway, 11th Floor
New York, NY 10018
Phone: (212) 216-1139
Fax:  (212) 216-8001
Email: jtemchin@tarterkrinsky.com
Attorneys for Defendant, FiveStory New
York, LLC

SO ORDERED:

_____
U.S.D.J.

28

**EXHIBIT B**
**STIPULATION OF DISMISSAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES MURPHY,
                              *Plaintiff,*

         v.                                          Civil Action No.: 1:18-cv-06934

FIVESTORY NEW YORK,
                              *Defendant.*

## STIPULATION OF DISMISSAL WITH PREJUDICE

Plaintiff, James Murphy ("Plaintiff"), and Defendant, FiveStory New York, LLC ("Defendant"), hereby stipulate and agree to dismiss this action with prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), resolving all matters in dispute having been made and each party shall bear their own costs, expenses, and attorneys' fees related to this action.

Dated: October ___ 2018                  Dated: October ___ 2018
         New York, New York                        New York, New York

**COHEN & MIZRAHI LLP**                   **TARTER KRINSKY & DROGIN LLP**

_____                 _____
Joseph H. Mizrahi, Esq.                   Jonathan E. Temchin
300 Cadman Plaza West, 12th Floor         1350 Broadway, 11th Floor
Brooklyn, New York 11201                  New York, New York 10018
Tel.: (929) 575-4175                      Tel.: (212) 216-8000
joseph@cml.legal                          jtemchin@tarterkrinsky.com

*Attorneys for Plaintiff*                 *Attorneys for Defendant*

30

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES MURPHY,

                *Plaintiff,*

      v.

FIVESTORY NEW YORK,

                *Defendant.*

Civil Action No.: 1:18-cv-06934

## STIPULATION OF DISMISSAL WITH PREJUDICE

Plaintiff, James Murphy ("Plaintiff"), and Defendant, FiveStory New York, LLC ("Defendant"), hereby stipulate and agree to dismiss this action with prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), resolving all matters in dispute having been made and each party shall bear their own costs, expenses, and attorneys' fees related to this action.

Dated: October ____ 2018
      New York, New York

Dated: October 10, 2018
      New York, New York

**COHEN & MIZRAHI LLP**

**TARTER KRINSKY & DROGIN LLP**

_____
Joseph H. Mizrahi, Esq.
300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201
Tel.: (929) 575-4175
joseph@cml.legal

_____
Jonathan E. Temchin
1350 Broadway, 11th Floor
New York, New York 10018
Tel.: (212) 216-8000
jtemchin@tarterkrinsky.com

*Attorneys for Plaintiff*

*Attorneys for Defendant*

SO ORDERED:

_____
HON. RONNIE ABRAMS
UNITED STATES DISTRICT JUDGE
10-18-18

30